617 F.2d 163
 Dianne OLDHAM, on behalf of herself, her minor children, and
all other persons similarly situated, Appellants,
and
Annie Dillard, on behalf of herself, her minor children, and
all other persons similarly situated, Intervening Appellants,
v.
Eldin J. EHRLICH, Individually and in his capacity as
Director of the Nebraska State Department of Public Welfare;
and Alan H. Ihms, Individually and in his capacity as
Assistant Director of the Nebraska State Department of
Public Welfare, Appellees.
 No. 79-1938.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 5, 1980.
Decided March 12, 1980.
 
 John B. Milligan, Lincoln, Neb., for appellant.
 Paul L. Douglas, Atty. Gen. and Royce N. Harper, Asst. Atty. Gen., Lincoln, Neb., for appellee.
 Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.
 STEPHENSON, Circuit Judge.
 
 
 1
 Invoking 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343, welfare recipients challenged a Nebraska regulation on the basis that it conflicted with the Social Security Act and violated the Due Process Clause. The district court[1] ultimately held that although the regulation was invalid on both statutory and constitutional grounds, the defendants Nebraska welfare officials had not enforced it in bad faith and therefore were not liable for compensatory or punitive damages. The court further held that the plaintiffs were entitled to an award of attorneys' fees, but limited the award to a nominal amount because plaintiffs' attorneys worked for a legal aid organization.
 
 
 2
 The principal issues on appeal are (1) whether the district court had jurisdiction, and if so, (2) whether the district court's attorneys' fee award was proper. Although we conclude the court had jurisdiction, we hold it abused its discretion in awarding only a token attorneys' fee.
 
 
 3
 I. Background.
 
 
 4
 Plaintiffs were recipients of Aid to Families with Dependent Children (AFDC). Their eligibility for AFDC benefits depended on their financial need, which was determined by a calculation of their income and resources. See generally 42 U.S.C. § 602(a)(7).
 
 
 5
 In January 1969, the Department of Health, Education and Welfare (HEW) issued a regulation specifying that, in the calculation of income and resources, "only such net income as is actually available for current use on a regular basis will be considered and only currently available resources will be considered." National Welfare Rights Organization v. Mathews, 174 U.S.App.D.C. 410, 420, 533 F.2d 637, 647 (D.C.Cir.1976) (quoting 45 C.F.R. § 233.20(a)(3)(ii)(c) (1974)). The Nebraska State Department of Public Welfare (the department) issued a similar regulation. Under this regulation, only the welfare recipient's equity in his automobile was considered as an available resource.
 
 
 6
 In March 1975, however, HEW issued a new regulation, which specified that the retail market value of a recipient's automobile, rather than his equity in it, must be considered as an available resource. On October 1, 1975, the department followed HEW's lead and implemented its own retail market value regulation.
 
 
 7
 As a result of the new regulation, the department revalued the resources attributable to plaintiffs' automobiles and notified them that their benefits would be suspended.[2] Plaintiffs, with the assistance of legal aid attorneys,[3] then sued for equitable relief, compensatory and punitive damages, costs, and attorneys' fees.
 
 
 8
 On November 1, 1976, the department rescinded the offending regulation and reverted to valuing automobiles on the basis of the amount of owner's equity. This action mooted plaintiffs' claim for equitable relief but left alive their claim for damages.
 
 
 9
 In January 1977, the court granted the plaintiffs' motion, under Fed.R.Civ.P. 37(a), to compel production of all departmental documents that recorded communications between the department and HEW concerning the retail market value regulation. The court reserved its ruling on plaintiffs' request for the expenses and attorneys' fees incurred in connection with the motion.
 
 
 10
 In January 1979, the district court issued its first ruling on the question of damages. The court held that the department's regulation was both statutorily and constitutionally invalid. The statutory holding followed from National Welfare Rights Organization v. Mathews, supra, 533 F.2d at 647, which, in striking down the HEW regulation on which the Nebraska regulation was modeled, held that "availability is required by the statute (42 U.S.C. § 602(a)(7))" and that it was improper for HEW to contend "that because the property itself is available, gross market value (and not the equity) is available." That contention was "contrary to fiscal realities." Id.
 
 
 11
 The constitutional holding followed from Vlandis v. Kline, 412 U.S. 441, 452, 93 S.Ct. 2230, 2236, 37 L.Ed.2d 63 (1973), which struck down a state university's policy of subjecting a student to a higher, nonresident tuition rate if he had been living outside the state at the time he applied for admission to college. The Supreme Court held that the Due Process Clause forbade the state universityto deny an individual the resident rates on the basis of a permanent and irrebuttable presumption of nonresidence, when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.
 
 
 12
 Id. at 452, 93 S.Ct. at 2236. The district court invoked Vlandis to rule that
 
 
 13
 (t)he defendants' promulgation and enforcement of the regulation here created a conclusive and irrebuttable presumption that the entire gross market value of an encumbered automobile was available as a current resource and could be converted into cash when in fact only whatever equity the person had in the automobile was available as a resource to meet their needs. The alternative means were simply to determine the equity, which was the policy which had previously been in effect.
 
 
 14
 Oldham v. Ehrlich, No. 76-L-175, slip op. at 11 (D.Neb. Jan. 29, 1979).
 
 
 15
 Upon ruling the regulation invalid, the court initially held the defendants liable for compensatory and punitive damages, but subsequently decided that defendants enjoyed official immunity under Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), because they had basis for a good faith belief in the regulation's validity. The court's final order granted no injunctive or monetary relief but awarded plaintiffs attorneys' fees of $1000 plus costs incurred with respect to plaintiffs' Rule 37 motion to produce. The court noted that "(t)he services rendered (by plaintiffs' attorneys) are actually worth a great deal more" than $1000,[4] but thought it important that those attorneys "are employees of a private nonprofit agency whose duty and whose opportunity is to protect people such as they are here protecting." Oldham v. Ehrlich, No. 76-L-175, slip op. at 4 (D.Neb. Sept. 28, 1979).
 
 
 16
 II. Jurisdiction.
 
 
 17
 The department contends that the present action, brought under 42 U.S.C. § 1983 with federal jurisdiction asserted under 28 U.S.C. § 1343(3), (4), should have been dismissed under Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The Court in Chapman held that, as far as section 1343 is concerned, a federal court's jurisdiction does not encompass actions based solely on conflicts between state welfare regulations and the Social Security Act.[5] The Court explained that section 1343 vests jurisdiction in federal courts only over actions brought to vindicate rights "secured by the Constitution," 28 U.S.C. § 1343(3), by any federal law "providing for equal rights," id., or by any federal law "providing for the protection of civil rights," id. (4). A section 1983 action that simply asserts the inconsistency of a state welfare regulation with the Social Security Act necessarily invokes a right secured by the Supremacy Clause, but does not seek to vindicate any right "secured by the Constitution" within the meaning of section 1343. Chapman v. Houston Welfare Rights Organization, supra, 441 U.S. at 611-15, 99 S.Ct. at 1913-15. Nor does the action seek to vindicate rights secured by an equal rights or civil rights law, for neither section 1983 nor the Social Security Act qualifies as such. Id. at 615-23, 99 S.Ct. at 1915-19.
 
 
 18
 The plaintiffs, acknowledging that their Social Security Act-Supremacy Clause claim did not give the district court jurisdiction, assert that their constitutional claim was substantial. They point out that, given a substantial constitutional claim, the district court could hear their Social Security Act claim as a matter of pendent jurisdiction. E. g., Hagans v. Lavine, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974). See Chapman v. Houston Welfare Rights Organization, supra, 441 U.S. at 618 n.36, 99 S.Ct. at 1916 n.36 ("Where the underlying right is based on the Constitution itself, rather than an Act of Congress, § 1343(3) obviously provides jurisdiction."); id. at 675, 99 S.Ct. at 1946. (Stewart, J., dissenting) ("Today's decision may not have a great effect on the scope of federal jurisdiction. * * * (E)ven a welfare recipient with a federal statutory claim may sue in a federal court if his lawyer can link this claim to a substantial constitutional contention. And under the standard of substantiality established by Hagans v. Lavine, supra (415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577), such a constitutional claim would not be hard to construct."). The department responds that the plaintiffs' due process claim is obviously frivolous and therefore cannot support jurisdiction over the Social Security Act-Supremacy Clause claim.
 
 
 19
 The nub of the jurisdictional question, then, is whether plaintiffs asserted a non-frivolous constitutional claim. The district court held their claim was not only non-frivolous but warranted a ruling that the Nebraska regulation was unconstitutional in addition to being contrary to the Social Security Act. When analyzed under the appropriate equal protection standard of "rational basis,"[6] e. g., Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), the retail market value regulation was arguably irrational as a means of measuring the resources of AFDC recipients in that, by assuming a car worth $4000 on which a family still owed $2000 represented $4000 in resources, the regulation "defie(d) the laws of economics and punishe(d) welfare recipients for the type of credit purchases also common to working families." National Welfare Rights Organization v. Mathews, supra, 533 F.2d at 648. Of course, on the other hand, perhaps the regulation was defensible as a means of implementing a policy decision to discourage purchases on credit, to prevent accumulation of luxury items, to assure a difference between assets of working and welfare families, and to cut welfare costs. See id. Whatever a fullblown equal protection analysis might reveal, we cannot say plaintiffs' constitutional claim was "essentially fictitious," "wholly insubstantial," "obviously without merit," or such that "prior decisions inescapably render the claim( ) frivolous." Hagans v. Lavine, supra, 415 U.S. at 537, 538, 94 S.Ct. at 1379. We therefore hold that plaintiffs' constitutional claim was substantial enough to allow the district court to take pendent jurisdiction over plaintiffs' Social Security Act claim.[7]III. Attorneys' Fees.
 
 
 20
 Plaintiffs maintain that they, as the prevailing parties in a section 1983 action, were eligible to receive a reasonable attorney's fee under 42 U.S.C. § 1988 (the Civil Rights Attorney's Fees Awards Act of 1976) and that it was improper to award them only a token fee on account of their attorneys' status as employees of legal aid organizations. The department responds that the plaintiffs did not prevail inasmuch as their request for injunctive relief became moot and their request for damages was ultimately denied. The department nevertheless accepts the district court's $1000 award of attorneys' fees as compensation for services performed in relation to plaintiffs' successful motion to produce and as compensation for the expenses incurred by the department's delay in adducing evidence of a good faith belief in the validity of its regulation. The department does not defend the award on the basis that plaintiffs had legal aid attorneys.
 
 
 21
 The first point to determine is whether plaintiffs prevailed for purposes of section 1988. Although the Nebraska regulation was amended before this case reached a trial on the merits,[8] the plaintiffs are considered the prevailing parties if the offending but now discontinued policy would have been declared invalid.[9] See, e. g., Inmates of the Nebraska Penal & Correctional Complex v. Greenholtz, 567 F.2d 1381, 1384 (8th Cir. 1977); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 429-30 (8th Cir. 1970). Had not defendants rescinded their regulation, it is virtually certain it would have been held invalid as contrary to the Social Security Act under National Welfare Rights Organization v. Mathews, supra. Given that plaintiffs had a non-frivolous constitutional claim, they may receive attorneys' fees as the prevailing parties on their pendent nonconstitutional claim. Kimbrough v. Arkansas Activities Association, 574 F.2d 423, 426 (8th Cir. 1978).
 
 
 22
 Next to decide is whether the court acted within its discretion in reducing the attorneys' fees award because plaintiffs had legal aid attorneys. Although a court may consider a large number of factors in arriving at a reasonable attorney's fee under 42 U.S.C. § 1988, e. g., Zoll v. Eastern Allamakee Community School District, 588 F.2d 246, 252 & n.11 (8th Cir. 1978), we conclude it is inappropriate to consider that the prevailing plaintiff's attorney was working for a legal aid organization. The basic purpose of section 1988 to encourage enforcement and observance of civil rights permits no distinction between private attorneys and legal aid organizations. Legal aid organizations can expand their services to indigent civil rights complaints by virtue of their receipt of attorneys' fees.[10] And a defendant sued by a plaintiff retaining legal aid counsel should not be benefited by the fortuity that the plaintiff could not afford private counsel. Thus, whether the focus is on enabling suit by those otherwise unable to afford litigation, or on deterring misconduct by imposing a monetary burden upon the wrongdoer, a legal aid organization merits an attorney's fee fully as much as does the private attorney. Accord, Lund v. Affleck, 442 F.Supp. 1109, 1111-12 (D.R.I.1977), aff'd, 587 F.2d 75, 76 (1st Cir. 1978); Rodriguez v. Taylor, 569 F.2d 1231, 1245-46 (3d Cir. 1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); Hairston v. R & R Apartments, 510 F.2d 1090, 1092 (7th Cir. 1975); Incarcerated Men of Allen County Jail v. Fair, 507 F.2d 281, 286 (6th Cir. 1974); Brandenburger v. Thompson, 494 F.2d 885, 889 (9th Cir. 1974). But see EEOC v. Enterprise Association Steamfitters Local 638, 542 F.2d 579, 593 (2d Cir. 1976) (no abuse of discretion to award federally subsidized public interest law firm less than a non-federally subsidized law firm).
 
 
 23
 Although we otherwise affirm the district court, we remand for determination of an award of attorneys' fees based upon the appropriate factors.
 
 
 
 [1]
 The Honorable Robert Van Pelt, Senior United States District Judge for the District of Nebraska
 
 
 [2]
 Plaintiff Annie Dillard's notification read as follows:
 Your 1975 Pontiac has (a) value of $5,100 and you are allowed $1200 as an exemption for working. This leaves your car being worth $3,900. You are allowed $2250 in resources so your car is putting you over the maximum allowable resources therefore making you ineligible to receive A(F)DC.
 (references to regulations omitted).
 
 
 [3]
 Plaintiff Dianne Oldham's attorneys worked for Legal Aid Society of Lincoln, Inc. Plaintiff Annie Dillard's attorney worked for Legal Aid Society of Omaha-Council Bluffs, Inc
 
 
 [4]
 Plaintiffs' attorneys indicated spending over 120 hours on the case, and requested compensation at the rate of $40.00 per hour
 
 
 [5]
 Of course, a Social Security Act claim would itself vest jurisdiction in a federal court if the amount in controversy exceeded $10,000. See 28 U.S.C. § 1331(a). The amount in controversy here was well below that
 
 
 [6]
 As noted, the district court rested its constitutional holding on Vlandis v. Kline, supra. We confess some difficulty with this reliance in light of the strong criticism of the use of Vlandis ' "irrebuttable presumption doctrine" as an independent basis on which to find a statute invalid, e. g., Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv.L.Rev. 1534, 1544-56 (1974); see generally L. Tribe, American Constitutional Law § 16-32 (1978), and in light of the Supreme Court's holding in Weinberger v. Salfi, 422 U.S. 749, 767-85, 95 S.Ct. 2457, 2467-76, 45 L.Ed.2d 522 (1975), which upheld a social security provision that denied survivor's benefits to a wife or child whose relationship with the deceased wage earner had lasted less than nine months
 The Weinberger Court declined to extend Vlandis to the social security requirement there in question. Reasoning that such an extension of the irrebuttable presumption doctrine "would turn (the irrebuttable presumption) cases into a virtual engine of destruction for countless legislative judgments," id. at 772, 95 S.Ct. at 2470, the Court ruled generally that governmental rules governing social insurance are valid, notwithstanding some overinclusion or underinclusion, so long as they are rationally based. Id. at 770, 776-77, 95 S.Ct. at 2472.
 Weinberger, then, teaches that the appropriate constitutional challenge to a seemingly arbitrary welfare regulation uses the language of equal protection rather than due process. Nevertheless, the irrebuttable presumption doctrine partakes heavily of equal protection doctrine, see, e. g., Note, supra, 87 Harv.L.Rev. at 1548 ("strange hybrid of due process and equal protection scrutiny"). We therefore conclude that although plaintiffs (and the court below) may have chosen an inappropriate mode of constitutional analysis, the plaintiffs' complaint implicitly raised the appropriate equal protection concerns. It is these concerns, not an irrebuttable presumption argument, that we examine for non-frivolousness.
 
 
 [7]
 Defendants also contend that plaintiffs' "due process argument is merely a restatement in other words of the supremacy clause argument decisively rejected by the Supreme Court in Chapman, supra " because "the protected property right arises out of the Social Security Act." Appellee's Brief at 26
 We disagree. Plaintiffs' statutory claim was that the regulation was not authorized by statute; their constitutional claim was that if the regulation were authorized by statute, the statute was unconstitutional. These claims, of course, are similar; otherwise there would be no pendent jurisdiction. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (claims must derive from "common nucleus of operative fact"). But they are not identical.
 
 
 [8]
 The court found that the department abandoned its regulation as a direct result of plaintiffs' suit
 
 
 [9]
 Defendants emphasize plaintiffs did not prevail on their claim for damages. Yet a party may be considered prevailing for purposes of section 1988 attorneys' fees without meeting success on every claim he has made. The degree of a plaintiff's success is appropriate to consider in gauging the amount of the attorney's fee to award, see e. g., Brown v. Bathke, 588 F.2d 634, 638 (8th Cir. 1978); Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir. 1978), but once plaintiff has won success on a single substantial claim, he qualifies as a prevailing party, see, e. g., id. at 278-79. It is sufficient, then, for plaintiffs here to show they would have been entitled to injunctive relief had defendants not mooted their claim
 
 
 [10]
 As the sentence in text implies, the attorneys' fee awarded in this case will go not to the individual attorneys but to their legal aid organization employers