723 F.2d 45
 Rev. Bill McLEAN; Bishop Ken Hicks; Right Rev. Herbert
Donovan; Most Rev. Andrew J. McDonald; Bishop Frederick C.
James; Rev. Nathan Porter, Individually and as Father and
Next Friend of Joel Randolph Porter; Rev. George W. Gunn;
Dr. Richard B. Hardie, Jr.; Rev. Earl B. Carter; Rev.
George Tanner; Dr. John P. Miles; Rev. Jerry Canada; The
American Jewish Congress; The Union of American Hebrew
Congregations; Frances C. Roelfs; Charles Bowlus,
Individually and as Father and Next Friend of Cordelia Ann
and Christopher Felix; Lon Schultz, Individually and as
Father and Next Friend of Andrea Schultz; The Arkansas
Education Association; The National Association of Biology
Teachers; E.E. Hudson; Mike Wilson; The American Jewish
Committee; National Coalition for Public Education and
Religious Liberty, Appellees,
v.
The ARKANSAS BOARD OF EDUCATION; Wayne Hartsfield; Mrs.
James Chestnutt; Harry A. Haines; Walter Turnbow; Jim
Dupree; Dr. Harry T. McDonald; Robert Newton; Alice L.
Preston; T.C. Cogbill, Jr., in Their Official Capacities as
Members of the Arkansas Board of Education; Don R. Roberts
in His Official Capacity as Director of the Arkansas
Department of Education; The State Textbooks and
Instructional Materials Selecting Committee, Appellants.
Rev. Bill McLEAN; Bishop Ken Hicks; Right Rev. Herbert
Donovan; Most Rev. Andrew J. McDonald; Bishop Frederick C.
James; Rev. Nathan Porter, Individually and as Father and
Next Friend of Joel Randolph Porter; Rev. George W. Gunn;
Dr. Richard B. Hardie, Jr.; Rev. Earl B. Carter; Rev.
George Tanner; Dr. John P. Miles; Rev. Jerry Canada; The
American Jewish Congress; The Union of American Hebrew
Congregations; Frances C. Roelfs; Charles Bowlus,
Individually and as Father and Next Friend of Cordelia Ann
and Christopher Felix; Lon Schultz, Individually and as
Father and Next Friend of Andrea Schultz; The Arkansas
Education Association; The National Association of Biology
Teachers; E.E. Hudson; Mike Wilson; The American Jewish
Committee; National Coalition for Public Education and
Religious Liberty, Appellants,
v.
The ARKANSAS BOARD OF EDUCATION; Wayne Hartsfield; Mrs.
James Chestnutt; Harry A. Haines; Walter Turnbow; Jim
Dupree; Dr. Harry T. McDonald; Robert Newton; Alice L.
Preston; T.C. Cogbill, Jr., in Their Official Capacities as
Members of the Arkansas Board of Education; Don R. Roberts
in His Official Capacity as Director of the Arkansas
Department of Education; The State Textbooks and
Instructional Materials Selecting Committee, Appellees.
 Nos. 83-1144, 83-1199.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1983.
Decided Dec. 19, 1983.
Rehearing and Rehearing En Banc Denied Jan. 16, 1984.
 
 E. Richard Larson, Jack D. Novik, American Civil Liberties Union Foundation, New York City, Robert M. Cearley, Jr., Cearley, Mitchell & Roachell, Philip E. Kaplan, Kaplan, Hollingsworth & Brewer, Little Rock, Ark., for appellees/cross-appellants.
 Steve Clark, David L. Williams, Deputy Atty. Gen., Little Rock, Ark., for appellants/cross-appellees.
 Before HEANEY, ROSS and JOHN R. GIBSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 On January 5, 1982, the district court[1] held that the Balanced Treatment for Creation-Science and Evolution-Science Act, Act 590 of 1981, Ark.Stat.Ann. Secs. 80-1663 et seq. (Supp.1981), violated the establishment clause of the first amendment to the United States Constitution. McLean v. Arkansas Board of Education, 529 F.Supp. 1255 (E.D.Ark.1982). The court permanently enjoined the defendants, representatives of the Arkansas Department of Education in their official capacities, from enforcing this "creationist statute." Id. at 1274. The defendants did not appeal the decision on the merits.
 
 
 2
 On April 26, 1982, the plaintiffs filed a motion requesting an award of attorneys' fees and costs under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 (Supp. V 1981) (as amended),[2] in the amount of $1,171,513.50 in fees and $189,892.55 in costs and litigation expenses. The plaintiffs submitted supplemental motions requesting attorneys' fees for an additional 242.85 hours of time expended during litigation of the fee question. After an evidentiary hearing, the court issued a memorandum and order on January 5, 1983, granting the plaintiffs' motions in part. On January 10, 1983, the court entered its judgment awarding the plaintiffs a total of $357,768.11 for attorneys' fees and expenses.[3]
 
 
 3
 Both the plaintiffs and the defendants appeal from the judgment. The defendants argue that any award of attorneys' fees on this record is unwarranted because: (1) the district court improperly refused to allow them reasonable and necessary discovery regarding the fee issue; (2) the parties stipulated to a February 26, 1982, deadline for the filing of fee requests which the plaintiffs failed to meet; and (3) special circumstances rendered the award of fees to the plaintiffs inequitable, those circumstances being (i) the defendants were powerless to change the creationist statute and never enforced it, (ii) the American Civil Liberties Union (ACLU)--which played a major role in representing the plaintiffs--conducted a specific fund-raising campaign to cover the costs of the action on the merits, (iii) the fee request was so excessive that it should have been denied as a deterrent to future abuse of section 1988, and (iv) an award of fees which would go to the ACLU was unethical under standards of professional conduct for attorneys. In the alternative, the defendants argue that the fees awarded by the district court are unreasonable because discovery would have revealed that the actual hourly billing rate of the plaintiffs' attorneys in similar cases was lower than that used by the district court in calculating the award herein.[4]
 
 
 4
 The plaintiffs disputed each of the issues raised by the defendants. In addition, they cross-appealed from the award, asserting: (1) the district court erred in calculating the fee award based upon a billing rate of $85 per hour for six of the plaintiffs' senior attorneys and $40 per hour for one associate; (2) the court erred as a matter of law in denying a contingency multiplier reflecting the novelty and complexity of the case; and (3) the court abused its discretion in denying a quality multiplier reflecting the admirable performance of the plaintiffs' counsel.
 
 
 5
 After reviewing the district court's opinion, the record, and the briefs on appeal, and hearing oral argument, we affirm for the reasons discussed in the opinion below. Of all the issues raised on appeal and cross-appeal, we think only one merits further comment by this Court. The defendants allege that the ACLU conducted a fund-raising campaign through the mail which was designed specifically to defer the costs of attacking the Arkansas creationist statute. They allege that at least 100,000 letters requesting donations of $100 or more to pay for the underlying action were distributed to the public, some even after the district court's January 5, 1983, decision on the merits. The defendants concede that the plaintiffs' representation by an independently funded organization such as the ACLU is not a special circumstance sufficient to deny an attorneys' fee award in this case. See New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 70 n. 9, 100 S.Ct. 2024, 2034 n. 9, 64 L.Ed.2d 723 (1980); Oldham v. Ehrlich, 617 F.2d 163, 168-169 (8th Cir.1980). They assert, however, that the ACLU's specific fund-raising efforts make an award of attorneys' fees inequitable or that any specific contributions to the ACLU which would not have been made but for this particular case should be deducted from any attorneys' fees awarded by the court in order to avoid a discernible windfall to that organization.
 
 
 6
 The district court concluded that the cases which hold general fund raising by legal services organizations irrelevant to the availability or amount of fee awards under section 1988 control the situation of specific fund-raising activities connected to civil rights litigation. The court found pertinent to both situations our position that a defendant should not benefit "by the fortuity that the plaintiff could not afford private counsel." Oldham v. Ehrlich, supra, 617 F.2d at 168-169. The parties cite no authority directly on point to resolve the specific fund-raising issue. After a careful review of this record and considering the rationale of cases dealing with general fund raising by legal services organizations, we are convinced that the conclusion reached below was proper.
 
 
 7
 First, the line between general and specific fund-raising activities is not that clear. In the instant case, the response card mailed out by the ACLU, and which the defendants allege evinces specific fund raising, states, on behalf of the contributor who returns it, "Yes, I'll join with * * * concerned citizens all across America in helping the ACLU strike down the Arkansas 'Creationist' law and keeping fundamentalist religious doctrine out of our public schools." The boxes below this heading, however, refer generally to $20 dues for membership in the ACLU, special contributions above membership dues to help the organization battle "well-financed opponents of civil liberties," or general contributions without membership "to help the ACLU." Furthermore, the cover letter of Isaac Asimov which apparently accompanied this card refers to similar litigation in Louisiana and elsewhere which would benefit from the responses to this mailing. Thus, as far as the Civil Rights Attorney's Fees Awards Act is concerned, a denial or reduction of the fee award because of the "specific" fund raising in this case would cast doubt upon all legal services fund-raising efforts which inform contributors of the work being done with their money. We decline to establish such a precedent, the principal effects of which would be to hamper legitimate efforts to obtain private funding for legal services organizations and to protract disputes over fee awards whenever such organizations are involved.
 
 
 8
 Second, we agree with the district court that the reasons underlying cases which hold general legal services fund raising irrelevant to a fee award under section 1988 are equally applicable to the specific fund-raising situation. Disregarding both general and specific fund-raising efforts by legal services organizations in awarding fees under section 1988 serves to deter "misconduct by imposing a monetary burden upon the wrongdoer." Oldham v. Ehrlich, supra, 617 F.2d at 169. In addition, fee awards ultimately benefiting legal services organizations, over and above their general or specific fund-raising efforts, help to insure the continued existence of such organizations and their ability to represent other indigent parties who cannot afford private legal representation. Id. at 168; Palmigiano v. Garrahy, 616 F.2d 598, 602 (1st Cir.), cert. denied, 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980). See also S.Rep. No. 94-1011, 94th Cong., 2d Sess. 2, reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5909-5910 (section 1988 intended to encourage private enforcement of civil rights laws); Note, The Scope of the Civil Rights Attorney's Fees Awards Act after Maine v. Thiboutot, Maher v. Gagne, and Supreme Court of Virginia v. Consumers Union, 66 Iowa L.Rev. 1301, 1328 (1981). Finally, Congress did not indicate, explicitly or implicitly, that the source of independent funding for legal services organizations should have any impact upon the availability or amount of attorneys' fees awarded under section 1988 to parties represented by such organizations. See Dennis v. Chang, 611 F.2d 1302, 1305-1306 (9th Cir.1980); Winslow v. Kansas Board of State Fair Managers, 512 F.Supp. 576, 578 (D.Kan.1981). Therefore, we hold that specific fund-raising activities by an organization representing a prevailing civil rights plaintiff are irrelevant to the issue of attorneys' fees available under the Civil Rights Attorney's Fees Awards Act of 1976.
 
 
 9
 In sum, we have carefully considered the district court's memorandum and order, the record, and the briefs and arguments of the parties, and affirm the judgment below based on the detailed and well-reasoned opinion of the district court.
 
 
 10
 JOHN R. GIBSON, dissenting.
 
 
 11
 I respectfully dissent. The court's opinion goes a step too far in holding that a specific financing campaign with respect to the litigation in question is not a special circumstance that can be considered in determining whether an attorney's fee should be awarded.
 
 
 12
 The district court masterfully treats the "billing judgment" issue with respect to the amount of the fee as has been required in Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The infirmity in the district court's ruling, however, which this court today approves, is in its holding that the specific fund drive of the ACLU should not be considered as a special circumstance to justify denial of a fee. In reaching this conclusion of law, the district court erred and failed to consider an issue that Congress intended should be considered in determining the fee issue.
 
 
 13
 The district court and this Court reasoned from Oldham v. Ehrlich, 617 F.2d 163, 168-69 (8th Cir.1980), that "a defendant sued by a plaintiff retaining legal aid counsel should not be benefited by the fortuity that the plaintiff could not afford private counsel." This ignores the reality of the situation in this case where the ACLU litigation has mounted a well-funded attack to eliminate the creation science statutes. The district court views the issue as one of whether the defendant should benefit from successful fund-raising drives initiated by the ACLU to attack these unconstitutional laws. Where the ACLU has chosen to undertake a litigation campaign with respect to these statutes, with an extensive fund-raising effort using the Arkansas case as a chief attraction to obtain contributions for use in Arkansas and elsewhere, it is the ACLU program that is benefiting. To discuss this in terms of allowing the Arkansas Board of Education to benefit is to ignore what ACLU has chosen to do.
 
 
 14
 This court in its opinion recognizes the strong statement in the ACLU fund request directed specifically at the Arkansas "Creationist" law, but reasons that the appeal was not specific because similar litigation in other states was the subject of the appeal. Even though the Isaac Asimov letter refers to other states, it makes specific reference to the "signal victory in Arkansas" and that "one of these cases--Arkansas, Louisiana or from a state still to come--is likely to reach the Supreme Court." The letter, although it mentions other states, must be considered with the pledge card referring specifically to Arkansas. The Arkansas case is central to the appeal for funds and, even more significantly, is used as the lure to obtain funds for similar litigation elsewhere. The district court properly characterized the drive as one "to support this litigation."
 
 
 15
 42 U.S.C. Sec. 1988 places discretion in the district court to award a reasonable fee. The legislative history of this statute makes clear that both Houses of Congress intended reasonable fees "which do not produce windfalls to attorneys." S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976); U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. H.R. No. 1558, 94th Cong., 2d Sess. 9 (1976). The fund-raising effort in this case directed to the Arkansas litigation produces such a windfall. The intent of this statute was not to allow utilizing a particular lawsuit to raise funds for the prosecution of that action and then have an attorney's fee awarded. With respect to congressional intent concerning windfalls, see Dowdell v. City of Apopka, Florida, 698 F.2d 1181 (11th Cir.1983), and Wheatley v. Ford, 679 F.2d 1037 (2d Cir.1982).
 
 
 16
 In Zarcone v. Perry, 581 F.2d 1039 (2d Cir.1978), the amount of the fund created by the litigation was a factor to be considered in awarding fees. Funds raised to support the litigation, such as in this case, are similar to funds created by the litigation. In Gagne v. Maher, 594 F.2d 336 (2d Cir.1979), public contribution of federal funds to the Legal Aid Society were allowed to be considered by the district court in reduction of fees awarded under the statute.
 
 
 17
 In Gagne the court recognized that the issue is one submitted to the sound discretion of the district court. I believe that reversal and remand is justified in this case because the district court made an erroneous conclusion that the specific fund drive was not a special circumstance to merit consideration in reduction of the fee. The record is far from complete as to the extent of funds raised by this drive. I think the issue should be further developed at a hearing and the district court then be allowed to exercise its discretion as to whether or not the funds raised should be used to offset the fees here awarded.
 
 
 
 [1]
 The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 The plaintiffs, in their complaint on the merits, alleged deprivation of constitutional rights under color of state law in violation of 42 U.S.C. Sec. 1983 (Supp. V 1981)
 
 
 [3]
 The court withheld allowance of $888.69 for court costs until the plaintiffs properly verified these costs as required by the clerk
 
 
 [4]
 The defendants argued in their opening brief that the district court erred in not apportioning the fee award based upon the court's failure to reach two issues raised by the plaintiffs at trial--that the creationist statute violated teachers' and students' academic freedom, and that the statute was unconstitutionally vague. Because the plaintiffs received total relief based on their establishment clause theory, and in light of the Supreme Court's recent decision in Hensley v. Eckerhart, --- U.S. ----, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the defendants withdrew this apportionment contention in their reply brief