Warriner, J., filed opinion in which he dissented in part and concurred in part.

Merhige, J., filed concurring opinion.

## CONSUMERS UNION OF UNITED STATES, INC., et al.

### v.

## AMERICAN BAR ASSOCIATION et al.

### Civ. A. No. 75–0105–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 8, 1981.

James W. Benton, Jr., Hill, Tucker & March, Richmond, Va., Ellen Broadman, Pe-

---

**3.** Transcript of Sentencing Proceeding, pp. 2–3.

**4.** Opinion of January 3, 1979 at Civil Action No. 78–1432.

ter H. Schuck and Marsha N. Cohen, Washington, D. C., for plaintiffs.

Robert H. Patterson, Jr., Judith B. Henry, Randolph Rollins, Anne Marie Whittemore, Walter H. Ryland, Deputy Atty. Gen. of Va., John F. Rick, Asst. Atty. Gen., Richmond, Va., Robert D. McLean, H. Blair White, Sidley & Austin, Chicago, Ill., for defendant.

Before BRYAN, Senior Circuit Judge, and MERHIGE and WARRINER, District Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

This action has been pending since 1975 before us, sitting as a three-judge tribunal, with appeals at intervals to the Supreme Court of the United States. It has now been refined to the sole question of whether the plaintiff, Consumers Union of the United States, Inc. (Consumers), having prevailed under 42 U.S.C. § 1983 on its assertion that Virginia Bar Code Disciplinary Rule 2–102(A)(6) (the Rule) unconstitutionally hindered its publication of a directory of attorneys practicing in Arlington County, Virginia,[1] is entitled to recover attorney's fees under 42 U.S.C. § 1988 from the Virginia State Bar (Bar) and/or the Supreme Court of Virginia (Virginia Court).[2]

Detailed reiteration of the earlier course of this litigation is rendered unnecessary by the comprehensive opinion of the United States Supreme Court in *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Therein the Court relates the constituent facts, with the rulings of this Court thereon, that induced us to allow Consumers' claim for attorney's fees against the Virginia Court, while disallowing a like claim against the Bar. *See id.* 446 U.S. at 721–734, 100 S.Ct. at 1969–74.

The Supreme Court vacated the award of attorney's fees because it rested in part on consideration of the Virginia Court's adoption, and retention even after *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), of the disputed disciplinary provision—actions the Supreme Court held to enjoy absolute legislative immunity. 446 U.S. at 736–37, 100 S.Ct. at 1977. On remand we again consider the propriety of a fee award against each defendant.

We adhere to the view, previously expressed in *Consumers Union of United States, Inc. v. American Bar Association*, 470 F.Supp. 1055 (E.D.Va.1979), that special circumstances exist in this case rendering a fee award against the Bar unjust. As before, this conclusion is grounded on the Bar's endeavors to have the Bar Code amended to conform to constitutional standards. *See id.* at 1062–63.

The Supreme Court, even as it vacated this Court's fee award, indicated that the Virginia Court's capacity as a State enforcement authority rendered it properly subject to suit in this case. 446 U.S. at 720–725, 729–737, 100 S.Ct. at 1968–71, 1973–77. Moreover, it emphasized that a fee award based solely on the Virginia Court's enforcement role would not be improper. *Id.* 446 U.S. at 736–37, 100 S.Ct. at 1977.

The Virginia Court is a fundamental source and conduit of disciplinary enforcement authority. Although the Bar may be more active in this sphere on a day-to-day basis, it acts merely as an "administrative agency of the Court."[3] It seems clear that "in the circumstances of this case, a sufficiently concrete dispute is ... made out against the Virginia Court as an enforcer," 446 U.S. at 737 n.15, 100 S.Ct. at 1977 n.15,

---

1. *Consumers Union of United States, Inc. v. American Bar Association*, 470 F.Supp. 1055 (E.D.Va.1979). The award of attorney's fees in this case, *id.* at 1058–63, was vacated, *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), and is before us again on remand.

2. Unless otherwise indicated, references herein to the Supreme Court of Virginia include its Chief Justice in his official capacity.

3. Va.Code § 54–49.

not only for amenability to suit, but also for the purpose of a fee award to Consumers, the prevailing party.

Nothing in the Supreme Court's opinion casts doubt on the propriety of this Court's earlier application of *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), to this case.[4] Under that standard, a court ordinarily should award reasonable attorney's fees to a prevailing civil rights plaintiff "unless special circumstances would render such an award unjust." *Id.* at 402, 88 S.Ct. at 966.

Upon review of the record throughout this litigation, we conclude that no special circumstances have been shown that would render unjust an award of attorney's fees against the Supreme Court of Virginia. Accordingly, we will order the Supreme Court of Virginia and its Chief Justice, in their official capacities, to pay to Consumers reasonable attorney's fees for the services of its counsel in this action, insofar as such services were performed to prevent the enforcement of the Rule. The amount of the fees, if not agreed upon between the Supreme Court of Virginia and Consumers within 30 days from the date of our order, shall be determined by this Court directly, or after reference to and report thereon by a master.

WARRINER, District Judge, dissenting in part and concurring in part.

I dissent from the majority opinion with respect to its award of attorney's fees against the Supreme Court of Virginia.[1] Insofar as the opinion speaks to the Virginia State Bar, I concur in the result only.

I.

My dissent with respect to the fee award against the Virginia Court can be understood best by examining the record. Plaintiffs sought a declaratory judgment that the Virginia Court and the State Bar had violated the First and Fourteenth Amendment rights of plaintiffs and their members to gather, publish, and receive information regarding lawyers in Arlington County, Virginia. Plaintiffs also sought an injunction against the enforcement of the rule prohibiting advertising by lawyers, DR2–102(A)(6) of the Code of Professional Responsibility of the Virginia State Bar. The Complaint alleged that the Virginia Court had promulgated the Code[2] and that the State Bar had the delegated authority to enforce the Code. *Consumers Union of United States, Inc. v. American Bar Ass'n*, 427 F.Supp. 506, 508 (E.D.Va.1976). The majority of this Court concluded in its original opinion that plaintiffs had a First Amendment right to gather, publish, and receive consumer information about lawyers, save for fee information.[3] *Id.* at 523. Accordingly, the majority held that insofar as DR2–102(A)(6) prohibited the advertising of not inherently misleading or deceptive consumer information, with the above exception, the public's right to the information was paramount, and the rule was *pro tanto* invalid. *Id.* at 521–23. In addition to this declaratory judgment, the Virginia Court and State Bar were enjoined from enforcing the rule. *Id.* at 523.

All parties appealed to the United States Supreme Court. The majority opinion was vacated and the case was remanded for "further consideration in light of *Bates v. State Bar of Arizona* [433 U.S. 350, 97 S.Ct.

---

4. *See* 470 F.Supp. at 1061. The Supreme Court noted the application of *Piggie Park*, and commented briefly thereon. 446 U.S. at 737 & n.17, 100 S.Ct. at 1977 & n.17.

1. Reference to the Supreme Court of Virginia, or to the Virginia Court, includes its Chief Justice in his official capacity.

2. The sole allegation in the Complaint implicating the Supreme Court of Virginia in any way reads as follows:

Defendant Supreme Court of Virginia adopted and promulgated the State Bar Code, purporting to act under the authority of § 54–48 of the Virginia Code.
Complaint, ¶ 3.

3. The concurring judge, the writer of this dissent, held that fee advertising, except for the fee charged for an initial interview, was inherently misleading. 427 F.Supp. at 525 (Warriner, J., concurring).

2691, 53 L.Ed.2d 810 (1977)]." *Consumers Union of United States, Inc. v. Virginia State Bar*, 433 U.S. 917, 97 S.Ct. 2993, 53 L.Ed.2d 1104 (1977). In light of *Bates*, we held on remand that the prior exception against fee advertising could no longer be maintained and that plaintiffs were entitled to gather and publish, and their members were entitled to receive, truthful information about lawyers, including fee information. *Consumers Union of United States, Inc. v. American Bar Association*, 470 F.Supp. 1055, 1058 (E.D.Va.1979). Thus, DR2–102(A)(6) was struck in its entirety and the Virginia Court and the State Bar proposed and consented to the entry of a decree enjoining them from enforcing the invalidated rule.

Plaintiffs then asked for an award of costs, including attorney's fees under 42 U.S.C. § 1988. The majority of this Court held first that the Virginia Court was not protected by judicial immunity from an award of attorney's fees for acts performed in its "judicial capacity." 470 F.Supp. at 1059–63. Second, finding no "special circumstances" rendering an award of attorney's fees unjust, *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), the majority required the Virginia Court to pay a reasonable counsel fee to be determined by this Court. The clearly stated basis for the award was that the Virginia Court was recalcitrant in amending or repealing DR2–102(A)(6) after *Bates*. 470 F.Supp. at 1062–63. The State Bar, on the other hand, had petitioned the Virginia Court, even prior to *Bates*, to amend the rule to conform to what it deemed to be constitutional standards. This was considered by this Court as a special circumstance rendering an award of attorney's fees against the Bar unjust. 470 F.Supp. at 1062–63.

In my dissenting opinion I raised the argument that the promulgation of the Bar Code by the Virginia Court was not an act of adjudication but one of rulemaking. 470 F.Supp. at 1063–73. I concluded that the Virginia Court enjoyed absolute legislative immunity from suit in performing this rulemaking function. Thus, the Virginia Court was immunized from an award of attorney's fees. I concluded also that the Virginia Court should have been dismissed from the action entirely on the basis of its legislative immunity even though its counsel had not pled nor argued this defense. *Id.* at 1073 n. 6.

On appeal, the United States Supreme Court disagreed with the majority opinion that promulgation of the Code was a judicial act. "[P]ropounding the Code was not an act of adjudication but one of rulemaking." *Supreme Court of Virginia v. Consumers Union of United States*, 446 U.S. 719, 729, 100 S.Ct. 1967, 1973, 64 L.Ed.2d 641 (2 June 1980). The Supreme Court agreed with the dissenting opinion that the Virginia Court was cloaked with absolute legislative immunity from suit itself for actions in its legislative capacity. 446 U.S. at 729–37, 100 S.Ct. at 1973–77.

Instead of dismissing the Virginia Court from the action at this point, the Supreme Court went further and concluded that "the Virginia Court and its Chief Justice properly were held liable in their enforcement capacities." 446 U.S. at 734, 100 S.Ct. at 1975. The basis for this conclusion was apparently twofold. First, the Virginia Court had for some reason argued before the Supreme Court that it had inherent and statutory authority to discipline and regulate the Virginia Bar. The Supreme Court accepted this admission and held that this enforcement authority makes the Virginia Court a proper defendant in a suit under 42 U.S.C. § 1983 for declaratory and injunctive relief. 446 U.S. at 734 & 736 n.15, 100 S.Ct. at 1975 & 1977 n.15. Second, in light of the *Bates* decision the Virginia Court and the State Bar had accepted that DR2–102(A)(6) could no longer be enforced against attorneys who provide plaintiffs with the desired information. The Virginia Court and State Bar therefore had proposed and consented that they be permanently enjoined from enforcing the by then unenforceable rule. Accordingly, in our final order, consistent with the parties' consent, we enjoined the Virginia Court and the State Bar from enforcing the rule. *See* 446 U.S. at 727 & 725

n.6, 100 S.Ct. at 1971 & 1972 n.6. Thus apparently reasoned the Supreme Court, since the Virginia Court claimed it had enforcement functions and since it had consented to be enjoined from exercising that function, a routine § 1983 settlement had taken place.[4]

With all respect I submit that the Supreme Court's ruling with respect to the Virginia Court is somewhat contradictory. The Court recognized at the outset of its opinion that plaintiffs' complaint "alleged only that the court promulgated the Bar Code. The other defendants were alleged to have authority to enforce the Code." 446 U.S. at 725–26, 100 S.Ct. at 1971. In addition, the Supreme Court recognized that the extent of the Virginia Court's statutory enforcement power is that it, along with all Virginia courts, may issue a rule against an attorney to show cause why his license to practice law should not be suspended or revoked. 446 U.S. at 721, 100 S.Ct. at 1969. Beyond this, the role of the Virginia Court or any other court of record is wholly and simply adjudicative. The actual prosecution is by the Commonwealth's attorney. *See* Va.Code § 54–74 (Cum.Supp.1980). Nevertheless, the Supreme Court concluded that "the Virginia Court and other courts in Virginia have enforcement authority beyond that of adjudicating complaints filed by others and beyond the normal authority of the courts to punish attorneys for contempt." 446 U.S. at 721, 100 S.Ct. at 1969. The Supreme Court did not disclose the basis for this conclusion, and I can discern none. Indeed, the Virginia Court and other courts in Virginia exercise their contempt power in essentially the same manner as they exercise their authority over a lawyer in a disciplinary matter. *Compare Holt v. Virginia*, 381 U.S. 131, 132, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965) (Virginia judge directed

Commonwealth's attorney to prepare order directing lawyer to show cause why he should not be punished for contempt) *with* Va.Code § 54–74 (Cum.Supp.1980) (Virginia Court or other court of Virginia issues a rule against attorney to show cause why his license to practice law should not be suspended or revoked; prosecution is by Commonwealth's attorney). Thus, the Virginia Court's enforcement authority under § 54–74 is not readily, if at all, distinguishable either functionally or legally from its contempt power.[5]

With respect to attorneys fees, the Supreme Court pointed out that this Court had premised its award on acts or omissions for which the Virginia Court enjoyed absolute legislative immunity. 446 U.S. at 737, 100 S.Ct. at 1977. The Supreme Court held that this Court erred in basing the award of attorney's fees on the Virginia Court's failure to amend or repeal DR2–106(A)(6).

> [I]t was an abuse of discretion to award fees because the Virginia Court failed to exercise its rulemaking authority in a manner that satisfied the District Court.

*Id.* By way of *dictum*, the Supreme Court stated that it would not be improper to award attorneys fees based upon the Virginia Court's enforcement role. *Id.*

The majority opinion of this Court on remand has accepted this *dictum* as a command. With dispatch, the majority has ordered the Virginia Court and its Chief Justice to pay plaintiffs' reasonable attorney's fees, "insofar as such services were performed to prevent the enforcement of the Rule." *Ante*, at 824. The majority finds support for its decision in its view that the Supreme Court vacated

> the award of attorney's fees because it rested *in part* on consideration of the Virginia Court's adoption, and retention

446 U.S. at 735, 100 S.Ct. at 1976. *See also Id.* 446 U.S. at 736 n.15, 100 S.Ct. at 1977 n.15.

---

**4.** The Supreme Court had this to say:

> As already indicated, [Va.Code § 54–74 (Repl. Vol. 1978)] gives the Virginia Court independent authority of its own to initiate proceedings against attorneys. For this reason the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were.

**5.** The only possible distinction is that the contempt power may be exercised summarily, whereas the enforcement authority may not. *See* Va.Code § 54–74 (Cum.Supp.1980).

even after *Bates v. State Bar of Arizona*, 433 U.S. 350 [97 S.Ct. 2691, 53 L.Ed.2d 810] (1977), of the disputed disciplinary provision—actions the Supreme Court held to enjoy absolute legislative immunity. 446 U.S. at 736, 100 S.Ct. at 1977. *Ante,* at 823. (Emphasis added). This contention is erroneous. The majority's award of attorney's fees was based *entirely* on the Virginia Court's legislative role. No reading of the majority opinion admits to any other conclusion. *See* 470 F.Supp. at 1062–63. The Supreme Court has so held:

> The District Court's award of attorney's fees in this case was premised on acts or omissions for which [the Virginia Court] enjoyed absolute legislative immunity.

446 U.S. at 732–34, 100 S.Ct. at 1975. If the fee award had rested only "in part" on the Virginia Court's legislative role, the Supreme Court may not have vacated and remanded; it most properly would have affirmed, stating the correct basis for the award, *e.g.,* the Virginia Court's enforcement role, and would have remanded only for a determination of reasonable fees.[6] Because this Court's award of attorney's fees was wholly in error the judgment was vacated and remanded instead.

Admittedly, the Virginia Court possesses the inherent and statutory authority to discipline and regulate the Virginia Bar. It is also true that we, in our pre-*Bates* opinion, enjoined the Virginia Court together with the State Bar from enforcing DR2–106(A)(6). After *Bates*, the Virginia Court consented to the entry of a decree enjoining it and the State Bar from enforcing the invalid rule against lawyers who provided the information plaintiffs sought. Strictly speaking, then, it could be said that plaintiffs prevailed against the Virginia Court in its enforcement capacity.[7] Consequently, the Supreme Court has concluded that we properly held the Virginia Court liable in its enforcement role under § 1983 and has now

foreclosed an examination here of that issue.

The point of my dissent, then, is that we are not foreclosed from re-examining the nature and extent of the Virginia Court's § 1983 liability in its enforcement capacity as it relates to the discretionary award of judgment against the Virginia Court for plaintiffs' counsel fees. Indeed, the Supreme Court has not commanded an award as the majority here supposes, but has directed that we consider the Virginia Court's "own *direct* enforcement role" in assessing attorney's fees. 446 U.S. at 739, 100 S.Ct. at 1978. (Emphasis added).

It is true that "[f]ee awards against enforcement officials are run-of-the-mill occurrences...." 446 U.S. at 739, 100 S.Ct. at 1978. In fact, it is the general rule that attorney's fees are ordinarily awarded under § 1988 to prevailing civil rights plaintiffs "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, supra,* 390 U.S. at 402, 88 S.Ct. at 966. With respect to the inquiry into the existence of "special circumstances," the Fourth Circuit has instructed:

> If this inquiry is needed, it should ... be an intensely pragmatic one. Its focus is rightly upon the justice under the total range of circumstances of conferring the benefit and imposing the concomitant burden represented by · the fee award.

*Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir. 1979). The court's discretion is to be exercised bearing in mind the purpose of § 1988 to encourage "private attorney general" suits. *Id.* It is inconsistent with the requirement of "an intensely pragmatic" inquiry to look at isolated phrases from the Supreme Court's opinion and pre-emptorily award counsel fees as the majority opinion has done. Instead, the inquiry must focus "upon the justice under the total range of

---

6. Indeed, had there been any proven basis in the record for the award of fees, the Supreme Court would not have awarded costs on appeal in favor of the Virginia Court. The Virginia Court clearly prevailed on appeal with respect to the attorney's fees issue.

7. As demonstrated within, no such explicit holding emanated from this Court for the simple reason that no such issue was ever presented to this Court. It was actually the Supreme Court of Virginia which, on appeal, injected its enforcement role into the litigation.

circumstances" of awarding attorney's fees in this case.

The most careful examination of the record reveals that the issue of the Virginia Court's enforcement role was never presented to us. Prior to *Bates* there were no allegations, no proffers of evidence, no briefs, no arguments, and no findings of fact by this Court with respect to the direct or even the indirect enforcement role of the Virginia Court. The allegations and proofs showed no more than that the Virginia Court had adopted the Bar Code and had promulgated a procedure for enforcement of the Code. In practice the Virginia Court's day-to-day enforcement authority had been delegated to the State Bar and the various district committees. Va.Code § 54–49 (Repl.Vol. 1978); Rules for the Integration of the Virginia State Bar, Part Six, Section IV, Subsection 13, 215 Va. 859, 946–49 (1975). It was as likely as not, under the record before us, that Virginia lawyers were personally opposed to advertising as it was that they refrained for fear of any prosecution by the Virginia Court. The issue, it must be repeated, simply was not alleged, proved, argued, or otherwise developed in the litigation in the trial court.

**8.** This Court's post-*Bates* opinion related the following incident:

> In December, 1978, a Virginia Beach, Virginia, attorney was indicted under two Virginia statutes for publication of an advertisement that was virtually identical to the advertisement which the Supreme Court in *Bates* found constitutionally protected, but which DR2–102(A)(6) still prohibited. The chilling effect of DR2–102(A)(6) on First Amendment freedoms is yet extant, even if not subject to objective calculations.

470 F.Supp. at 1062.

While this recitation of alleged facts *aliunde* the record has emotional appeal, it had no legal significance in this case. The Virginia Beach lawyer was not prosecuted by the Virginia State Bar or by the Virginia Supreme Court. Neither entity had brought the charges. Further, the lawyer was not prosecuted under DR2–106(A)(6) or any other rule promulgated by or subject to be enforced by defendants. He was prosecuted by a local Attorney for the Commonwealth under statutes enacted by the General Assembly. If this incident tends to prove anything it tends to prove that defendants were *not* enforcing the defunct advertising ban.

This is a significant factor in determining whether plaintiffs are entitled to attorney's fees because of their efforts, prior to *Bates*, to enjoin the enforcement of the rule by the Virginia Court. They made none.

After *Bates*, the issue of the Virginia Court's enforcement role again was not raised by plaintiffs. This is not at all surprising. At this time, plaintiffs, along with all informed attorneys in the United States, knew that lawyers were free to advertise so long as the information was not deceptive or misleading. No one reasonably would have contended that DR2–106(A)(6) could be enforced at that time.[8]

Plaintiffs argued for the first time on remand that the Virginia Court has a "direct" enforcement role. This contention obviously has been grasped by plaintiffs as a result of the Supreme Court's suggestion that an award of fees against the Virginia Court in its enforcement capacity would not be improper. The record indicates, as I have attempted to demonstrate above, that plaintiffs never alleged nor proved in this case that the Virginia Court had a direct enforcement role with respect to Virginia lawyers.[9] As a practical matter plaintiffs

**9.** In addition, it should be noted that as a matter of law and fact the Virginia Court could not have disciplined or punished plaintiffs in its enforcement capacity. Unlike Virginia lawyers, plaintiffs were not threatened by prosecution for violation of DR2–106(A)(6). Plaintiffs simply could not obtain the information sought to publish their directory because attorneys chose for whatever reason to obey the rule or to follow their own sense of propriety. Plaintiffs' First Amendment rights were thwarted, but were not "chilled." "Chilling" is philosophically and legally distinguishable from "thwarting." A citizen is chilled in the exercise of his rights when the State puts him in fear to deter him from the free exercise of his rights. Another citizen who is thereby denied an opportunity to hear the chilled citizen is thus thwarted. Both have protectable rights, but the citizen put in fear by the State elicits greater concern from the law.

This is not to suggest that plaintiffs were not entitled to vindicate their constitutional rights. *See Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57, 763–65, 96 S.Ct. 1817, 1822–23, 1826–27, 48 L.Ed.2d 346 (1976); *Consumers Union of U. S. v. American Bar Ass'n*, 427

could not have so alleged or proved. The Virginia Court's so-called enforcement role is simply the authority to issue a rule to show cause against an offending attorney [10] in essentially the same manner as it would exercise its contempt power against an attorney. *See* Va.Code § 54–74(1) (Cum. Supp.1980). The day-to-day authority to investigate and to report Bar Code violations to the Circuit Courts is vested in the State Bar through its several district committees. Rules for the Integration of the Virginia State Bar, Part Six, Section IV, Subsection 13, 215 Va. 859, 946–49 (1975). The actual prosecution of a violation is by the attorney for the Commonwealth in the Circuit Courts of the State. Va.Code § 54–74(3) (Cum.Supp.1980). By statute the Virginia Court is, then, relegated to the adjudicative function of hearing Bar Code violation appeals. Va.Code § 54–74(5) (Cum.Supp.1980). Whatever inherent or statutory enforcement role may be possessed by the Virginia Court, as a practical matter its *exercise* of power in virtually all cases is as a court of appeals of Bar Code violations.

That the Virginia Court ever consented to be included in the injunction prohibiting enforcement of DR2–106(A)(6) was an error resulting entirely from this Court's and defense counsel's lack of assiduousness, and not from plaintiffs' efforts to enjoin "enforcement" of the rule by the Virginia Court. Indeed, had the defense of legislative immunity raised in the initial stages of the law suit the Virginia Court would have been dismissed out of hand. The defense of legislative immunity was overlooked.[11] As a result, the Virginia Court was permitted to be included as an injunctive defendant in both the majority's pre- and post-*Bates* injunction orders. This pleading lapse does not justify an award of attorney's fees against the Virginia Court. Indeed, such a circumstance is a "special circumstance" rendering an award of fees unjust.

In summary, I believe it is an abuse of discretion to award attorney's fees against the Virginia Court for not doing that which it was not alleged to have done; for not doing that which it was not proved to have done; for not doing that which, as against plaintiffs, it could not have done; and for not doing that which, in practice, it rarely does. Such an award would do nothing to further the purpose of § 1988 to encourage "private attorney general" suits. Rather, an award against the Virginia Court in its so-called enforcement role, based upon the record in this case, would simply be a determination that the fee should be paid by the Virginia Court without regard to the justice of the case.

II.

With respect to the State Bar, I concur with the result in the majority opinion but for a different reason. The majority has concluded that "the Bar's endeavors to have the Bar Code amended to conform to constitutional standards..." constitute special

---

F.Supp. at 517. As was observed at oral argument before this Court on remand, it matters not to the plaintiff who wields the buzz saw if he is being chewed up. It does matter, however, to the indiscriminately sued defendant who wielded not the buzz saw, in this case, the Virginia Court. The Virginia Court could only have affected plaintiffs in its legislative capacity as a result of its promulgation of the Bar Code. In this capacity the Virginia Court was immune from suit. 446 U.S. at 729, 100 S.Ct. at 1973. It is thus unjust to award fees against the Virginia Court in an enforcement capacity, a capacity in which the Virginia Court was powerless as against plaintiffs.

**10.** In practice the issuance of such a rule is a rarity. Almost all complaints against offending lawyers emanate from sources other than the

Supreme Court of Virginia. Inquiry of Allen L. Lucy, who has been Deputy Clerk and Clerk of the Supreme Court of Virginia, successively, since 1952, revealed that the Supreme Court of Virginia has issued less than a half dozen rules to show cause against offending lawyers in nearly thirty years.

This special inquiry was necessary to get a glimpse as to what the evidence might have been had plaintiffs alleged or attempted to prove the Virginia Court had exercised enforcement authority in this case.

**11.** It is clear that the defense had not been waived by the Virginia Court as is evidenced by the Supreme Court's decision. *See* 446 U.S. at 729–37, 100 S.Ct. at 1973–77. *See also* 470 F.Supp. at 1071–72 (Warriner, J., dissenting).

circumstances rendering a fee award unjust. *Ante*, at 825. This conclusion slips into the same error as did the majority's earlier opinion.[12]  470 F.Supp. at 1058–63. It focuses on legislative rather than enforcement activity.

If the fact that the State Bar lobbied the Virginia Court for legislation to amend the Code is relevant at all, it is because it demonstrates, first, that the Bar was unwilling to enforce the rule against advertising and, second, that the Bar was not antagonistic to plaintiffs' claim for relief. Nevertheless, when the Virginia Court rejected the State Bar's petition for amendment to DR2–206(A)(6), the Bar was duty bound, as the Virginia Court's administrative agency for the regulation of the practice of law,[13] to defend the rule. In this context, the State Bar was required to defend on proper legal grounds a rule it believed to be unconstitutional. When the rule was ultimately struck down as unconstitutional, the State Bar was enjoined from enforcing it.[14] Technically, then, plaintiffs prevailed against the State Bar, even though the Bar was not opposed to the result. Under these circumstances, I cannot in good conscience require the Bar to pay attorney's fees simply because plaintiffs were technically the "prevailing parties."

In addition, it would be unfair to award fees against the State Bar for dutifully defending DR2–106(A)(6). This might not be true if the rule had been widely perceived, pre-*Bates*, as unconstitutional. This was not the case, however. The ban on lawyer advertising was a time-honored and universally accepted regulation to the practice of law. Its constitutionality was not seriously questioned prior to *Bates*, in which the Supreme Court held, in a 5 to 4 decision, that attorneys have a First Amendment right to advertise truthful information about their profession. Before the *Bates* decision the State Bar could have avoided its duty to defend DR2–106(A)(6) only by pretending that this historical basis for the rule did not exist. Instead, the Bar did its best to defend the rule which it had not promulgated and did not fully support. To require the State Bar to pay plaintiffs' counsel fees under these circumstances would be a warning to all defendants similarly situated that they defend at their peril. In doubtful, but expensive litigation, the courts will be witnessing a "dive," in boxers' parlance, rather than the vigorous defense our adversary system demands. Congress could not have intended this result when it enacted § 1988.

These circumstances are also significant as they relate to the State Bar's "good faith." Though the Supreme Court has ruled that "bad faith" is not necessary for an award of attorney's fee under § 1988, *Hutto v. Finney*, 437 U.S. 678, 693–700, 98 S.Ct. 2565, 2574–78, 57 L.Ed.2d 522 (1978), the Court has not ruled that a party's good faith cannot at least be considered as a special circumstance in determining wheth-

---

**12.** I can only assume, but not conclude, that our finding of special circumstances with respect to the State Bar was in error because the Bar's separate appeal was vacated and the case was remanded "for further consideration in light of *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)." *Consumers Union of United States v. Virginia State Bar*, 447 U.S. 901, 100 S.Ct. 2980, 64 L.Ed.2d 850 (U.S.Sup.Ct.1980). However, the Supreme Court did not specifically rule nor indicate in *Consumers Union* that our finding with respect to the State Bar was "clearly erroneous." *See* 446 U.S. at 737, 100 S.Ct. at 1977. *See generally, United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948) (interpreting Fed. R.Civ.P. 52(a)). The Supreme Court merely

stated that "[w]e are not convinced that it would be unfair to award fees against the State Bar...." 446 U.S. at 739, 100 S.Ct. at 1978.

**13.** *See* Va.Code § 54–49 (Repl. Vol. 1978).

**14.** It should be remembered that in Virginia, the State Bar is not the repository of enforcement authority. As the Supreme Court recognized, the Bar's actual enforcement authority is vested in district committees. 446 U.S. at 721, 100 S.Ct. at 1969. Nevertheless, the Supreme Court said *in dictum* that it would not be unfair to award fees against the State Bar in its enforcement capacity. *Id.* 446 U.S. at 737, 100 S.Ct. at 1977. Here again the factual basis for the Supreme Court's opinion is not apparent in the trial record so far as this writer can discern.

er an award of fees is appropriate. *See* 470 F.Supp. at 1074 (Warriner, J., dissenting). Accordingly, the State Bar should not be required to pay plaintiffs' counsel fees where it defended the rule on proper legal grounds after making a good faith effort to have the Bar Code amended to reflect its perceived standards of constitutionality, and where it made a good faith effort to reach an amicable settlement between the parties after *Bates.*

On the basis of these special circumstances, an award of attorney's fee against the Supreme Court of Virginia and against the Virginia State Bar would be unjust and properly should be denied.

MERHIGE, District Judge, concurring.

I concur with the views expressed in Judge Bryan's succinct and learned opinion and write briefly in response to the dissent of my colleague, Judge Warriner.

While concluding it fruitless to address in any detail the views expressed in the dissent, I suggest that adoption of those views would, to a great extent, represent a rejection of Virginia's highest court's expressed opinion of its statutory and inherent enforcement authority. *See Button v. Day,* 204 Va. 547, 132 S.E.2d 292.

I decline, out of respect for the opinions of the Supreme Court of Virginia and the Supreme Court of the United States, as well as a duty to follow the law as enunciated by the Supreme Court, to ignore that of which I have judicial notice. *See Gormly v. Bunyan,* 138 U.S. 623, 635, 11 S.Ct. 453, 457, 34 L.Ed. 1086 (1890); *Mills v. Green,* 159 U.S. 651, 657, 16 S.Ct. 132, 134, 40 L.Ed. 293 (1895).

Additionally, contra to Judge Warriner's expressed statements, the record amply supports and mandates the action the court this day takes.

Lest, however, one mistakenly attributes this response as a total rejection of the statements contained in the dissent, I acknowledge my concurrence with Judge Warriner's view that "Plaintiffs' First Amendment rights were thwarted...."

The complete statement reads, "Plaintiffs' First Amendment rights were thwarted, but were not 'chilled' ".[1] If, as I conclude, it is intended to suggest that a "thwarting" of one's First Amendment rights is less onerous than the "chilling" of one's First Amendment rights, my rejection is total.

1. Footnote 9 of the dissent.