**John WINSLOW et al., Plaintiffs,**

**and**

**International Society for Krishna Consciousness of Colorado, Inc., Intervenor,**

**v.**

**KANSAS BOARD OF STATE FAIR MANAGERS et al., Defendants.**

**Civ. A. No. 78–1374.**

United States District Court, D. Kansas.

Feb. 17, 1981.

Barry A. Fisher, Robert C. Moest, David Grosz, Beverly Hills, Cal. and Stephen M. Joseph of Pendergraft, Glover & Joseph, Wichita, Kan., for plaintiffs.

Bruce Miller, Deputy Atty. Gen., Topeka, Kan., for defendants.

ORDER AWARDING ATTORNEY FEES

THEIS, Chief Judge.

On August 21, 1980, this Court entered summary judgment in favor of the intervenor plaintiff. The Court held that the "solicitation and advertising" rule (booth rule) promulgated by the Kansas Board of State Fair Managers, violated the First and Fourteenth Amendments of the Constitution. The Court permanently enjoined the defendants and all others from enforcing this rule. The plaintiffs and intervenor now move for an award of attorney fees.

The defendants contend that fees should not be awarded since (1) the defendants at all times acted in good faith; (2) the named individuals were not "prevailing parties;" (3) the plaintiffs and intervenor did not incur any litigation expense or attorney fees; and (4) the promulgation of the unconstitutional booth rule was a legislative act, rendering the defendants immune from an award of attorney fees.

All parties to this action agree that the general rule is that a prevailing party proceeding under 42 U.S.C. § 1983 is entitled to recover attorney fees unless special circumstances render such an award unjust. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980). The defendants contend that the reasons set out above render an award of attorney fees unjust. In *Love v. Mayor of Cheyenne*, 620 F.2d 235, 236 (10th Cir. 1980), the Tenth Circuit held "the good faith of the defendant is not a reason for the denial of § 1988 attorney's fees." The first reason given by the defendant must fail.

The second argument is that the named individual plaintiffs are not prevailing parties within the meaning of the statute. The Senate Report on the Attorney's Fees Award Act, provided:

> "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief."

S.Rep.No. 94–1011, 94th Cong.2d Sess. 5 (1976), *reprinted in* [1976] U.S.Code Cong. and Ad.News 5908, 5912.

The Tenth Circuit discussed the intended meaning of prevailing parties:

> "If a settlement provides some benefit to plaintiffs or some vindication of their rights, then the congressional intent to encourage private enforcement of civil rights ... will be furthered by the awarding of fees. This is true even when both sides lose something and gain something, resulting in a 'draw,' as long as plaintiffs have received substantial benefits. *See Dawson v. Pastrick*, 600 F.2d 70, 78–79 (7th Cir. 1979). Therefore, the court must determine whether the basic objectives plaintiffs seek from the lawsuit have been achieved or furthered in a significant way. *See Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir. 1979)."

*Chicano Police Officer's Assoc. v. Stover,* 624 F.2d 127, 131 (10th Cir. 1980).

The defendants argue that the named plaintiffs cannot be prevailing parties because they were voluntarily dismissed from the action prior to the Court finally striking down the booth rule. Dismissal of the plaintiffs in this manner, however, is not conclusive on the question of whether they are prevailing parties. The action was brought by these individuals to prevent enforcement of the booth rule at the Kansas State Fair held in September, 1978. A temporary restraining order was issued. This order was extended one year later to cover the 1979 Fair by agreement of the parties. For these two years the plaintiffs received all the relief they desired. The legal action was a "catalyst" for the relief. The individual plaintiffs are prevailing parties entitled to fees.

The defendants next argue that the plaintiffs and intervenor did not incur any attorney fees because the attorneys were paid from another source. The defendants thus argue that the plaintiffs did not incur any attorney fees for which to be compensated. No support for this proposition is cited by the defendants. The policy underlying the Attorney's Fees Award Act would seem to require fee shifting from successful plaintiffs to defendants, even if attorneys for the plaintiffs are funded by a third party. In *Love v. Mayor of Cheyenne,* 620 F.2d 235, 237 (10th Cir. 1980), the Court noted:

> "It is well settled that the ACLU is entitled to an award of attorney's fees under § 1988."

The same rule applies if the plaintiff's attorney is provided by a publicly funded agency. See *Simmons v. James,* No. 77–2162 (D.Kan. unpub. 6–2–79); *Palmigiano v. Garrahy,* 616 F.2d 598 (5th Cir. 1980); *Gunther v. Iowa State Men's Reformatory,* 466 F.Supp. 367, 368 (N.D.Iowa 1979).

> "An allowance of fees should not be denied or diminished because plaintiffs' attorneys were employed or funded by a civil rights organization and/or tax exempt foundation or because the attorneys do not exact a fee from plaintiffs."

*Cole v. Tuttle,* 462 F.Supp. 1016, 1019 (N.D. Miss.1978). An award in this case is not made improper by the third reason given by defendants.

The final argument in opposition to an award of fees is that fees cannot properly be assessed against the defendants since the promulgation of the regulation was a legislative act and an official acting in a legislative capacity is immune from suit and from an award of attorney fees. This proposition arises from *Supreme Court of Virginia v. Consumers Union of the United States,* supra. In that case a civil rights action was brought against the Virginia Supreme Court and the Chief Justice seeking a declaration that an ethical rule was an unconstitutional infringement on speech. The plaintiffs sought a permanent injunction against enforcement of the rule. Before the district court, the plaintiffs were successful and obtained an award of attorney fees. The United States Supreme Court disagreed with the award of attorney fees. The Court noted that the reason given for awarding fees against the Virginia Supreme Court was that the Virginia Supreme Court failed to amend its disciplinary rule. 100 S.Ct. at 1977.

> "The District Court's award of attorney's fees in this case was premised on acts or omissions for which appellants enjoyed absolute legislative immunity. This was error." 100 S.Ct. at 1978.

The Court went on to observe:

> "Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction. Nor would we disagree had the District Court awarded fees not only against the Bar but also against the Virginia Court because of its own direct enforcement role." *Id.*

On remand, it appears that the District Court reimposed attorney fees based on the Virginia Supreme Court's enforcement role. *Consumers Union of United States, Inc. v.*

*American Bar Ass'n,* 505 F.Supp. 822 (1981).

The present case does not fall within the narrow rule of *Consumers Union.* The Board and the individual defendant were sued in their capacities as the enforcement agents for the booth rule. See ¶¶ 5 and 6 of the Complaint and ¶¶ 5 and 6 of the Answer. At a deposition, the defendant Gottschalk was asked:

> "Q. As part of your duties as Secretary in addition to those you indicated earlier, are you also responsible for enforcing the rules and regulations promulgated by the Board of State Fair Managers for the operation of the Fair?
>
> A. Yes."

Deposition of Robert Gottschalk, taken July 9, 1980, pp. 46–47. Their role as enforcement agents bring them within the general rule, such that the Court may enter the award of fees against the Kansas State Board of Fair Managers and Robert Gottschalk in their official capacities as enforcers of the unconstitutional rule.

In determining the amount of an award of attorney fees, this Court must look at twelve factors:

> "(1) the time and labor required, (2) the skill requisite to properly perform the legal services, (3) preclusion of other employment by the attorney due to acceptance of the case, (4) the novelty and difficulty of the questions presented, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship of the client, and (12) awards in similar cases. House of Representatives Report No. 1558, 94th Cong., 2nd Sess. 8 (1976); Senate Report No. 1011, 94th Cong., 2nd Sess. 6 (1976)."

*Battle v. Anderson,* 614 F.2d 251, 257 (10th Cir. 1980).

*1. Time and labor required.*

Stephen Joseph has submitted an affidavit and supporting materials to document his claim of 66 hours and 42 minutes spent on this matter. Robert Moest has submitted an affidavit and supporting materials to document his claim for 42 hours and 45 minutes. The supporting materials show that the claimed time does not include travel time. The amount of time claimed is not at all disproportionate to the expected amount in light of the three year history of the case and the presentations of counsel in this matter.

*2. Skill required and novelty of the question.*

This attack on the booth rule is far from unique. The booth rule has been challenged in many other forms with virtually unanimous success. This case, therefore, is neither a particularly novel case nor a case requiring a great amount of skill. The Court believes, however, that the diligent efforts expended by plaintiffs' counsel, and the meticulous preparations and high degree of skill which plaintiffs' counsel demonstrated, were useful in this case and lead to a more expeditious conclusion of this matter than would have otherwise occurred.

*3. Preclusion of other employment and time limitations.*

This case was not all consuming for either of plaintiffs' counsel. An aggregate of 110 hours for two attorneys over the course of three years would not seem to have the effect of precluding either counsel from other employment. On the other hand, the case seemed to be seasonal in nature, requiring actions be taken in a limited period prior to the time of the Fair's opening in each of the three years. During these periods this litigation may have conflicted with other activities of counsel.

*4. The customary fee.*

Stephen Joseph asserts his customary fee is $70.00 per hour for this type of work. Robert Moest establishes his customary fee at $90.00 per hour. These fees do not appear extreme.

5. *The amount involved and results obtained.*

This action was responsible for a declaration that a rule of the State Board of Fair Managers was unconstitutional. No "amount" as such was involved, but the vindication of the constitutional rights involved in this litigation extended beyond the parties to this case. The plaintiffs were completely successful in obtaining the results they sought.

6. *The experience, reputation and ability of counsel.*

The Court is personally acquainted with the reputation and ability of Stephen Joseph. In the area of first amendment rights, both are exceptional. The affidavit of Robert Moest establishes him as an exceptionally qualified and able attorney.

7. *The undesirability of the case.*

Although this case involves an area of the law which would be of interest to many lawyers, the case does deal with the vindication of rights of a group who possess a view different from that held by the majority of the citizens of this country. Helping to vindicate the rights of these individuals may not add to the public prestige of an attorney in this community. At the least, representation of the plaintiffs in this case may provide controversy such as could render the case undesirable and provide an approbrious viewpoint by some of the public. This factor weighs in favor of an increase in the amount of fees.

8. *Extent of professional relationship with plaintiffs.*

Robert Moest appears to have an ongoing relationship with the intervenor plaintiff. The relationship of Stephen Joseph with the plaintiffs is unknown, but believed to be independent of any such relationship with intervenor.

9. *Awards in similar cases.*

This Court has attempted to determine the fee awards in similar cases. In *Simmons v. Jones,* No. 77–2162 (D.Kan. unpub. 6–2–79), Judge Rogers approved an effective rate of $50.00 per hour for an attorney who successfully challenged the Kansas recoupment statute. In *Fisher v. Anderson,* No. 78–4305 (D.Kan. unpub. 5–24–79), the Court approved an effective hourly rate of $60.00. In *Battle v. Anderson,* 614 F.2d 251 (10th Cir. 1980), a $60.00 per hour rate was approved. Robert Moest has presented the Court with similar cases from Indiana and Illinois in which awards of fees in the range of $60.00 to $100.00 were approved.

After an examination of the foregoing factors, and cognizant that the "fees set under section 1988 must be in line with those fees traditionally received from a fee-paying client," *Gurule v. Wilson,* 635 F.2d 782 (10th Cir., 12–1–80), the Court finds that a rate of $75.00 per hour is appropriate for plaintiffs' counsel, Stephen Joseph and Robert Moest, respectively, and disparity in value of legal services would obtain between plaintiffs' counsel solely because of a particular attorney's locale of practice and the fact that the services were performed in this Court. Inasmuch as no travel time was included in counsels' time logs and the detrimental effect mentioned in factor 7 above, a slight enhancement of hours was made by rounding Joseph's hours to 70 and Moest's to 45 hours. Joseph's allowed fee would then be $5,250.00, and Moest's $3,375.00. The Court also finds that expenses in the amount of $102.14 for Stephen Joseph, and $394.36 for Robert Moest, are appropriate.

IT IS THEREFORE ORDERED that plaintiffs and intervenor plaintiff are awarded fees and expenses for the services of Stephen Joseph of $5,352.14, and fees and expenses for the services of Robert Moest of $3,769.36. The total award against the defendants in their official capacities is thus $9,121.50.