No. 82–1301.   SUPREME COURT OF VIRGINIA ET AL. *v.* CONSUMERS UNION OF UNITED STATES, INC., ET AL.   C. A. 4th Cir.   Certiorari denied.   JUSTICE POWELL took no part in the consideration or decision of this petition.   ▮

CHIEF JUSTICE BURGER, with whom JUSTICE REHNQUIST joins, dissenting.

This petition marks the third occasion this case has been before us.   The case arose in 1975 when respondents brought

a suit under 42 U. S. C. § 1983 alleging that particular provisions of the State Bar Code promulgated by the Virginia Supreme Court violated respondents' rights under the First and Fourteenth Amendments. Having prevailed in their § 1983 suit for declaratory and injunctive relief against the Virginia Supreme Court and its chief justice (together, the "Virginia Court"), the issue now is whether respondent Consumers Union is entitled to attorney's fees from that court[1] under the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U. S. C. § 1988. This was also the issue we addressed the last time this case came before us, when we vacated an award of attorney's fees against the Virginia Court on the ground that it "was premised on acts or omissions for which [the Virginia Court] enjoyed absolute legislative immunity." *Supreme Court of Virginia* v. *Consumers Union of United States, Inc.*, 446 U. S. 719, 738 (1980) *(Consumers Union)*.

On remand, a divided three-judge District Court reinstated the award of attorney's fees against the Virginia Court, *Consumers Union* v. *American Bar Assn.*, 505 F. Supp. 822 (ED Va. 1981), and a divided panel of the Court of Appeals affirmed. *Consumers Union* v. *Virginia State Bar*, 688 F. 2d 218 (CA4 1982). Because I believe that the District Court misinterpreted our opinion in *Consumers Union* and erred in reinstating the fee award, I would grant certiorari.

I

It is unnecessary to review here at length the prior history of this case, which is set out in detail in *Consumers Union.* There, two basic issues faced the Court:

"[W]hether the Supreme Court of Virginia (Virginia Court) and its chief justice are officially immune from

---

[1] Respondents sued the Supreme Court of Virginia, its chief justice, the Virginia State Bar, and others. Petitioners in this case are the Supreme Court of Virginia and its chief justice.

suit in an action brought under 42 U. S. C. § 1983 challenging the Virginia Court's disciplinary rules governing the conduct of attorneys and whether attorney's fees were properly awarded under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988, against the Virginia Court and its chief justice in his official capacity." 446 U. S., at 721.

With respect to the first issue, we held that the Virginia Court was not subject to suit under § 1983 for its legislative acts—such as promulgating disciplinary rules—any more than state legislators could be sued for their legislative acts: "[T]he Virginia Court and its members are immune from suit when acting in their legislative capacity." *Id.*, at 734. However, the Court went on to hold that the Virginia Court was a proper defendant in a coercive action brought under § 1983 because it possessed enforcement powers. "As already indicated, § 54–74 [of the Code of Virginia (1978)] gives the Virginia Court independent authority of its own to initiate proceedings against attorneys. For this reason the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were." *Id.*, at 736.

Turning to the second issue, we vacated the award of attorney's fees against the Virginia Court. The District Court had awarded fees against the Virginia Court because "it was the very authority that had propounded and failed to amend the challenged provisions of the Bar Code." *Id.*, at 738. This was error because the Virginia Court had legislative immunity for its acts in promulgating disciplinary rules:

> "We are unable to agree that attorney's fees should have been awarded for the reasons relied on by the District Court. Although the Virginia Court and its chief justice were subject to suit in their direct enforcement role, they were immune in their legislative roles. Yet

the District Court's award of attorney's fees in this case was premised on acts or omissions for which [the Virginia Court] enjoyed absolute legislative immunity." *Ibid.*

We explained that nothing in the legislative history of § 1988 indicated that Congress "intended to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity." *Ibid.*

We then vacated the award of attorney's fees and remanded, presumably to permit the District Court to determine whether the role of the Virginia State Bar—the Virginia Court's codefendant in the case—in enforcing the challenged rules justified an award of attorney's fees against it.

On remand, the District Court interpreted *Consumers Union* as holding that an award of attorney's fees against the Virginia Court would be appropriate on the existing record "based solely on the Virginia Court's enforcement role . . . ." 505 F. Supp., at 823. The District Court reasoned that because the Virginia Court's enforcement role rendered it liable to a coercive suit under § 1983, it was also liable for attorney's fees under § 1988:

> "It seems clear that 'in the circumstances of this case, a sufficiently concrete dispute is . . . made out against the Virginia Court as an enforcer,' . . . not only for amenability to suit, but also for the purpose of a fee award to [respondent], the prevailing party." *Id.*, at 823–824, quoting *Consumers Union, supra,* at 736, n. 15.

The District Court quoted *Newman* v. *Piggie Park Enterprises, Inc.*, 390 U. S. 400, 402 (1968), in arguing that § 1988 ordinarily requires an award of attorney's fees against a party properly sued under § 1983 "'unless special circumstances would render such an award unjust.'" 505 F. Supp., at 824. It concluded that no such circumstances existed here and so awarded fees against the Virginia Court.

One judge dissented, arguing that the Virginia Court's "enforcement role" was not established by the record and hence could not serve as the basis for an award of attorney's fees.

A divided Court of Appeals affirmed, holding that the award of attorney's fees against the Virginia Court was not an abuse of discretion. The Court of Appeals interpreted *Consumers Union* as holding that an award of attorney's fees would be justified on this record.[2]

## II

The immunity of judges from monetary judgments for their actions as judges is deeply embedded in our legal system. *E. g., Stump* v. *Sparkman*, 435 U. S. 349 (1978); *Bradley* v. *Fisher*, 13 Wall. 335 (1872); *Johnston* v. *Moorman*, 80 Va. 131, 139–140 (1885). In *Pierson* v. *Ray*, 386 U. S. 547, 554–555 (1967), we refused, in the absence of specific statutory language, to presume that Congress intended by enacting § 1 of the Civil Rights Act of 1871, 42 U. S. C. § 1983, to displace the historic rule of judicial immunity; we held that the doctrine of judicial immunity was applicable in suits for damages under that section. The principles of *Pierson* apply with full force to suits for attorney's fees under § 1988.

---

[2] In dissent, Judge Chapman trenchantly pointed out that the ostensible purpose of this suit—to force the Virginia Supreme Court and Virginia State Bar to permit respondent Consumers Union to publish a directory of lawyers—had long been submerged in the quest for attorney's fees:

"For the past three years this suit has been nothing but an effort by the plaintiff's attorneys to establish a theory upon which they could collect a fee. In the spring of 1979 the last possible impediment to gathering the information and publishing the Attorney's Directory for Arlington County was removed. However, when this case was argued in November 1981 the directory had not been printed or distributed. As a result of numerous questions by the court to the attorneys for Consumers Union, the information has been gathered and the directory published. A copy of the directory was forwarded to this court on June 15, 1982. It contains the names of 78 attorneys in Arlington, Virginia. This action has made three trips to the United States Supreme Court, and is presently on its way back to the Supreme Court, all to produce 78 names." 688 F. 2d 218, 224 (CA4 1982).

Nothing in the language or legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 specifically indicates Congress' intent to sweep away the historic immunity of judges from monetary judgments. In *Pierson*, the Court explained that the purpose of judicial immunity

> " 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' . . . Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." 386 U. S., at 554 (citations omitted).

See also *Dennis* v. *Sparks*, 449 U. S. 24, 31 (1980). I fail to see how an award of attorney's fees is any less of a threat to judicial independence than an award of damages. An independent judiciary, uncowed by fears of financial liability for its official acts, is an integral aspect of state sovereignty and critical to the security of our freedoms. I would not presume that Congress cast this fundamental rule to the winds in the absence of specific statutory language rendering judges liable for attorney's fees. No such language is found in § 1988.

Although judges are immune from monetary damages under § 1983 for their official acts, see, *e. g.*, *Stump* v. *Sparkman, supra*, they are nonetheless subject to suit for injunctive and declaratory relief in their administrative capacities. *E. g.*, *Law Students Civil Rights Research Council, Inc.* v. *Wadmond*, 299 F. Supp. 117, 123–124 (SDNY 1969) (three-judge District Court) (Friendly, J.), aff'd on other grounds, 401 U. S. 154 (1971). However, it is beyond peradventure that the amenability of a judge to suit for equitable relief for his role in enforcing or administrating a statute does not render him liable for damages for that same act. See, *e. g.*, *Slavin* v. *Curry*, 574 F. 2d 1256, 1264 (CA5 1978); *Louis* v. *Supreme Court of Nevada*, 490 F. Supp. 1174, 1182 (Nev. 1980). I do not understand how it can be that a judge

should be liable for attorney's fees for performing the same act for which he would be immune from damages. Here, the Virginia Court was held subject to suit for injunctive and declaratory relief because it possessed the power to enforce or administer disciplinary rules against members of the State Bar. *Consumers Union*, 446 U. S., at 736. Such liability no more entails liability for attorney's fees than it does for damages.

The District Court and Court of Appeals purported to rely on dictum in *Consumers Union* stating that a fee award against the Virginia Court might be proper if made "because of its own direct enforcement role." *Id.*, at 739. Assuming, *arguendo*, that a fee award could be made against a judge for his acts in an administrative or enforcement capacity, the District Court still erred.

We held in *Consumers Union* that the Virginia Court was a proper defendant in a coercive § 1983 suit because it had the potential power to prosecute attorneys for disciplinary violations. However, there was no evidence in the record that it had ever exercised its enforcement powers. After vacating the award because it was premised on acts—the promulgation and failure to amend the challenged disciplinary rules—for which the Virginia Court was entitled to absolute legislative immunity, we remanded the case. If we had thought that the mere existence of enforcement authority would support the award, there would have been no need to remand as to the Virginia Court. Thus, we necessarily remanded for further findings on the Virginia Court's actual exercise of its enforcement powers, and for consideration of whether such acts justified a fee award against the court.

On remand, the District Court took no evidence as to the Virginia Court's actual role in enforcing the challenged rule; in reinstating the award, it relied solely on the mere existence of disciplinary authority. 505 F. Supp., at 823–824. In short, the fee award rests on the same basis now—the Virginia Court's promulgation of disciplinary rules—that it did

before. The District Court's reliance on the Virginia Court's potential "disciplinary enforcement authority" cannot cover up the utter lack of proof in the record that the Virginia Court ever did anything to enforce the rule. Thus, the fee award cannot stand.

For all the foregoing reasons, I would grant certiorari to consider the important question of whether an award of attorney's fees against a judge may be premised solely on the existence of enforcement authority.